Mr. Barry E. Somerstein Director Sunrise Intracoastal Neighborhood Security District Post Office Box 1900 Fort Lauderdale, Florida 33302
Dear Mr. Somerstein:
You ask substantially the following question:
 Is the Sunrise Intracoastal Security District, created pursuant to s. 163.506, F.S. (1988 Supp.), of the Safe Neighborhood Act, a "state agency or subdivision" for purposes of s. 768.28, F.S. (1988 Supp.)?
In sum, I am of the opinion that:
 The Sunrise Intracoastal Security District, created as a neighborhood improvement district pursuant to s. 163.506, F.S. (1988 Supp.), is a "state agency or subdivision" for purposes of s. 768.28, F.S. (1988 Supp.).
Part IV, Ch. 163, F.S., is the Safe Neighborhoods Act.[1]
Pursuant to the act, the governing body of a municipality or county may authorize the formation of safe neighborhood improvement districts through the adoption of a planning ordinance.[2] Such an ordinance is to specify that safe neighborhood improvement districts may be created by one or more of the methods specified in the act.[3]
According to the information provided to this office, the Sunrise Intracoastal Security District was created pursuant to s. 163.506, F.S. Pursuant to that section, the local governing body of a municipality may establish a local government neighborhood improvement district by enactment of an ordinance which, among other things, authorizes the district to levy an ad valorem tax on real and personal property of up to 2 mills annually and to use special assessments pursuant to Ch. 170, F.S., to support planning and implementation of district improvements.[4]
This office has been advised that the Sunrise Intracoastal Security District has been granted the authority to levy an ad valorem tax up to 2 mills and to use the special assessments pursuant to Ch. 170, F.S., to support district improvements.[5]
In addition, the board of directors of the district has been granted the authority to exercise certain of the powers enumerated in s. 163.514, F.S. (1988 Supp.), which include the authority to enter into contracts, to sue and be sued as a body corporate, and to acquire, own and dispose of property.[6]
Section 768.28, F.S. (1988 Supp.), constitutes a limited waiver of immunity from tort liability for the state "and for its agencies or subdivisions" to the extent provided in the act.
The statute provides in part:
 Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.[7]
The waiver of immunity is limited to $100,000 on any claim or judgment by one person or $200,000 for all claims arising out of the same incident or occurrence.[8]
"State agencies or subdivisions" are defined for purposes of the statute to include "independent establishments of the state; counties and municipalities; and corporations primarily acting as instrumentalities or agencies of the state, counties, or municipalities."[9] The Sunrise Intracoastal Neighborhood Security District, created as a body corporate and vested with some of the ordinary corporate powers as well as the power to levy ad valorem tax and special assessments, would appear to fall within the above definition of "state agencies or subdivisions."[10]
Therefore, I am of the opinion that the Sunrise Intracoastal Neighborhood Security District created pursuant to s. 163.506, F.S. (1988 Supp.), of the Safe Neighborhood Act, as a body corporate with the powers specified within the act, is included within the scope of s. 768.28, F.S. (1988 Supp.).
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] See, s. 163.501, F.S. And see, s. 163.502, F.S., setting forth the legislative intent.
[2] See, s. 163.504(1), F.S. (1988 Supp.).
[3] See, ss. 163.506, 163.508 and 163.511, F.S. (1988 Supp.), which establish the procedures for the creation of these districts by the local governing body of a municipality or county.
[4] See, s. 163.506(1)(c) and (d), F.S. (1988 Supp.), respectively.
[5] City of Fort Lauderdale Ordinance No. C-88-58, ss. 4 and 5.
[6] City of Fort Lauderdale Ordinance C-88-58 prohibits the district from exercising certain powers specified in s. 163.514, F.S. (1988 Supp.); see, s. 11 of the ordinance.
[7] Section 768.28(1), F.S. (1988 Supp.).
[8] Section 768.28(5), F.S. (1988 Supp.).
[9] Section 768.28(2), F.S. (1988 Supp.).
[10] See, AGO's 89-26 and 86-74 (hospital districts), 89-22 (county research and development authority), 87-53 (county land authority), 78-33 (housing authority), concluding that the special districts and authorities considered therein were "state agencies or subdivisions" for purposes of s. 768.28, F.S. Cf., s. 1.01(8), F.S. (1988 Supp.), defining "political subdivision[s]" generally for purposes of the Florida Statutes to include "all other districts in this state."